UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY KELTER,

      Plaintiff,

v.                                       CASE NO. 8:20-cv-2695-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____/

## **MEMORANDUM OPINION AND ORDER**[1]

    **THIS CAUSE** is before the Court on Plaintiff's appeal of an

administrative decision denying his application for a period of disability and

disability insurance benefits ("DIB"), filed on August 17, 2017.[2]  Following an

administrative hearing held on July 11, 2019, the assigned Administrative

Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from

November 20, 2014, the alleged disability onset date,[3] through October 11,

---

    [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 15, 17.)

    [2] In order to be entitled to a period of disability and DIB, Plaintiff had to establish disability on or before December 31, 2019, his date last insured.  (Tr. 15-16.)

    [3] The alleged onset date is one month after Plaintiff's work injury on October 20, 2014, when Plaintiff was injured while lifting heavy items (Tr. 802).

2019, the date of decision.  (Tr. 12-26, 32-56.)

In reaching the decision, the ALJ found that Plaintiff had "the

following severe impairments: previous obesity, but now overweight; . . .

lumbar spine congenital mild stenosis with lipomatosis, disc spacing, bulging

discs, and annular tear."  (Tr. 17.)  The ALJ also found that Plaintiff had the

residual functional capacity ("RFC") to perform light work, except:

> [The claimant] is only occasionally able to climb, balance, stoop,
> kneel, crouch, crawl, and climb ladders, but never climb scaffolds,
> ropes, or at open, unprotected heights.  He is able to sit for 6
> hours and stand and/or walk for 6 hours each in an 8-hour day
> with usual breaks.  He also must be able to change positions from
> sitting to standing every 30 to 60 minutes for 2 minutes without
> significantly interrupting work.  The claimant must also avoid
> extreme vibrations.

(Tr. 19.)[4]  Then, after finding that Plaintiff was unable to perform any past

relevant work, the ALJ concluded, based on Plaintiff's age, education, work

experience, RFC, and the testimony of a Vocational Expert ("VE"),[5] that there

---

[4] As stated in 20 C.F.R. § 404.1567(b):
Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds. Even
though the weight lifted may be very little, a job is in this category
when it requires a good deal of walking or standing, or when it
involves sitting most of the time with some pushing and pulling of arm
or leg controls. To be considered capable of performing a full or wide
range of light work, you must have the ability to do substantially all of
these activities. If someone can do light work, we determine that he or
she can also do sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit for long periods
of time.

[5] The ALJ found that the VE's testimony was consistent with the information

were jobs existing in significant numbers in the national economy that

Plaintiff could perform.[6]  (Tr. 24-26.)  Based on a review of the record, the

briefs, and the applicable law, the Commissioner's decision is due to be

**AFFIRMED**.

I.      **Standard of Review**

The scope of this Court's review is limited to determining whether the

Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841

F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389,

390 (1971).  "Substantial evidence is more than a scintilla and is such

relevant evidence as a reasonable person would accept as adequate to support

a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th

Cir. 2004).  Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have

---

in the Dictionary of Occupational Titles ("DOT") pursuant to Social Security Ruling ("SSR") 00-4p, except "[f]or issues not contemplated by the DOT, such as a sit/stand option or being off-task," about which the VE "testified that her testimony was based on method time and theory motion, which is an industrial engineering theory for production rate."  (Tr. 26.)

[6] Specifically, the VE testified that a hypothetical person with Plaintiff's age, education, work experience, and RFC, could perform the representative occupations of final inspector (DOT number 727.687-054), small products assembler (DOT number 739.687-030), and poly-packer and heat-sealer (DOT number 920.686-038). (Tr. 26.)

reached a contrary result as finder of fact, and even if the reviewer finds that

the evidence preponderates against the Commissioner's decision. *Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d

1356, 1358 (11th Cir. 1991). The district court must view the evidence as a

whole, taking into account evidence favorable as well as unfavorable to the

decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must

scrutinize the entire record to determine the reasonableness of the

Commissioner's factual findings).

## II.    Discussion

### A.    The Parties' Positions

Plaintiff's sole issue on appeal is that the ALJ did not sufficiently

evaluate the opinion of Plaintiff's treating provider, Eric Shelton, PA-C, and,

thus, his unfavorable decision was not supported by substantial evidence.

(Doc. 19 at 1.) Plaintiff argues "the ALJ's RFC assessment did not account

for all the limitations in Mr. Shelton's opinion that the ALJ found to be

persuasive." (*Id.* at 13.) Plaintiff explains:

> Here, the ALJ concluded that "[s]ome of Mr. Shelton's opined
> limitations are consistent with the record, such as his ability to
> lift and carry weight and need to change positions regularly."
> (*See* Tr. 22). Yet, the ALJ's decision did not accurately reflect the
> limitations in lifting and carrying that Mr. Shelton described.
> Mr. Shelton wrote that Claimant could never lift or carry 20
> pounds, occasionally lift 10 pounds, and frequently lift less than

4

10 pounds.  (*See* Tr. 1019).  That contradicts the ALJ's finding that Claimant can perform light work, (*see* Tr. 19), as light jobs require a claimant to be able to lift 20 pounds occasionally and 10 pounds frequently, *see* 20 C.F.R. § 404.1567(b) ("Light work requires lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds").  Since the ALJ specifically concluded that Mr. Shelton's findings about lifting and carrying were supported by the evidence, the ALJ should have limited Plaintiff to lifting no more than 10 pounds occasionally.

(*Id.* at 13-14).

Plaintiff next argues that the ALJ did not adequately explain why he

did not credit the rest of PA Shelton's opinion:

> [T]he ALJ offered only a vague explanation for finding the rest of Mr. Shelton's opinion to be unpersuasive.  The ALJ wrote that Mr. Shelton's opinion included "exaggerated speculative statements not supported by or consistent with any objective evidence" that "appear to be based entirely on the claimant's self-reported symptoms."  (*See* Tr. 22).  The ALJ asserted that Mr. Shelton's treatment notes in Exhibits 12F and 13F were inconsistent with his opinion. (*See id.*).

> Plaintiff respectfully submits, however, that the physical examination findings in Mr. Shelton's notes fully supported the functional restrictions that he described.  Mr. Shelton observed that Plaintiff had tenderness with palpitation of the posterior superior iliac spine, the sciatic notch, the sacroiliac joint, the supraspinatus ligament, the paraspinal and iliolumbar regions, the gluteus maximus, the gluteus minimus, the sciatic nerve, and the pifirormis. (Tr. 943-44, 946-47, 950, 954, 958, 962-63, 969-70, 975-76, 981- 82, 994-95, 1001-02).  Plaintiff also had a reduced range of motion in his lumbar spine.  (*Id.*).  This evidence of widespread musculoskeletal pain supports Mr. Shelton's conclusion that Plaintiff would need extra breaks during the workday and that he would miss several days of work per month due to his pain.  (*See* Tr. 1017-19).  The ALJ failed to explain how Mr. Shelton's treatment notes were inconsistent with his opinion.

In addition, the record contradicts the ALJ's assertion that Mr. Shelton was simply parroting Plaintiff's subjective complaints. (*See* Tr. 22). Mr. Shelton observed that Plaintiff suffered from sharp, chronic pain that interfered with his sleep, work, movements, positioning, twisting, flexion, and extension. (Tr. 1017). Mr. Shelton also noted that Plaintiff's pain would constantly interfere with his ability to work because he needed to stretch, change positions, and use medications. (*Id.*). So, Mr. Shelton did provide an objective basis for the functional limitations that he described. In addition, the physical examinations documenting widespread tenderness and a limited range of motion supported Mr. Shelton's conclusion that Plaintiff would need extra breaks during the workday to stretch or to lie down. (Tr. 943-44, 946-47, 950, 954, 958, 962-63, 969-70, 975-76, 981-82, 994-95, 1001-02).

(*Id.* at 14-16). Plaintiff concludes that the ALJ's decision did not adequately

evaluate PA Shelton's opinion and requests remand for further consideration

of PA Shelton's opinion. (*Id.* at 16.)

Defendant concedes that "the ALJ misstated PA Shelton's lifting

opinion." (Doc. 20 at 9.) Defendant explains:

PA Shelton did not opine that Plaintiff could occasionally lift 20 pounds (Tr. 1019). Despite this error, the ALJ's RFC, including its limitation to lifting 20 pounds occasionally and 10 pounds frequently is supported by other evidence as discussed below.

(*Id.*) Defendant then summarizes the ALJ's discussion of PA Shelton's

records as follows:

The ALJ noted that PA Shelton observed on examinations from October 2018 to March 2019 that Plaintiff had normal gait, full motor strength and sensory function but with some lumbar tenderness (Tr. 22, 943, 946, 949-50, 953-54, 957-58, 962-63, 975-

76, 981-82, 987-88, 994-95, 1001-02, 1009-10, 1012-13, 1015-16).
The ALJ further noted that PA Shelton noted that Plaintiff
reported his lumbar injections provided "significant relief" and
that he was "very happy" with the results (Tr. 22, 945, 949, 953,
957, 969, 975, 981, 987, 994, 1001).  The ALJ also noted that
while Plaintiff did report some worsening but tolerable pain in
January 2019, he was reporting improvement in March 2019 (Tr.
22, 1009, 1013, 1015).  Accordingly, PA Shelton's longitudinal
treatment records do not support his disabling opinions.  *See* 20
C.F.R. § 404.1520c(c)(1).

Moreover, PA Shelton's disabling opinions are inconsistent
with the other medical evidence as noted by the ALJ (Tr. 20-23).
Among other things, the ALJ noted that his treating physician
found in 2015 that he was able to walk smoothly and heel to toe
(Tr. 20, 256).  In April 2015, Plaintiff had entirely normal
physical examination findings and reported pain improvement
(Tr. 20, 253).  His physician gave him a 3% total body impairment
with a 35-pound lifting restriction (Tr. 20, 254).  In 2017, he was
observed with normal gait and had ability to walk heel and toe
with normal strength and reflexes (Tr. 21, 518).  Throughout
2017 and 2018, the ALJ noted Plaintiff had similar examination
findings with normal strength and sensation with no spinal
tenderness or spasm (Tr. 21, 902, 906, 938).  These findings are
inconsistent with PA Shelton's disabling opinions.  20 C.F.R. §
404.1520c(c)(2).

(*Id.* at 9-10.)

Defendant then discusses other reasons justifying discounting PA

Shelton's opinion, including Plaintiff's ability to carry out activities of daily

living, conservative treatment, and contrary conclusions in prior

administrative findings:

The ALJ also noted that Plaintiff's activities of daily living
showed he lived alone and was able to take care of himself (Tr.
23).  He prepared meals, performed household chores, washed
dishes, swept, did laundry, drove[,] and shopped (Tr. 23, 39, 44).

7

His activities of daily living are also inconsistent with PA Shelton's disabling opinions. 20 C.F.R. § 404.1520c(c)(2).

Additionally, the ALJ noted that Plaintiff's treatment was conservative (Tr. 23). The ALJ stated that despite an isolated recommendation to undergo surgical intervention, Plaintiff treatment recommendation[s] were rest, weight loss, and injections (Tr. 23). The ALJ noted that Plaintiff conservatively treats [with] over[-]the[-]counter pain relievers (Tr. 23, 50, 240). This conservative treatment provides further evidence to discount PA Shelton's disabling opinions.

The Commissioner further notes that the prior administrative findings by the state agency physicians provide additional support for the RFC and to discount PA Shelton's disabling opinions (Tr. 24, 61-64, 77-78). Plaintiff does not contest the ALJ's findings that the opinions were persuasive. State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1) (2017). The state agency physicians reviewed Plaintiff's medical records and determined that he was capable of light work (Tr. 24, 61-64, 77-78). The ALJ found them persuasive noting they provided a detailed narrative description of the evidence relied upon including physical examinations and diagnostic imaging (Tr. 24). The opinions of the state agency physicians are additional evidence to support the ALJ's RFC and to discount PA Shelton. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c).

(*Id.* at 10-11 (footnote omitted).) Defendant concludes that "while Plaintiff does present some evidence in support of PA Shelton['s] [opinions,] the ALJ properly noted issues with supportability and consistency." (*Id.* at 11.)

### B.     Analysis

Before determining a claimant's ability to perform past relevant work

at step four of the sequential evaluation process,[7] the ALJ must determine the claimant's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. In doing so, an "ALJ must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or acceptable medical sources concerning what a claimant may still be able to do despite his impairments. 20 C.F.R. § 404.1513(a)(2). The primary considerations are whether the claimant is limited in the ability to perform the physical and mental demands of work activities, and in the ability to see, hear, or use other senses or adapt to environmental conditions. *Id.*

The revised Regulations governing the evaluation of medical opinions for applications filed on or after March 27, 2017 apply to this case. 20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source. *Compare* 20 C.F.R. § 404.1527(c) *with* 20 C.F.R. § 404.1520c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2)

---

[7] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

consistency; (3) the source's relationship with the claimant; (4) the source's

area of specialization; and (5) any other relevant factors "that tend to support

or contradict a medical opinion," such as whether the source is familiar with

the other record evidence or has "an understanding of [the SSA's] disability

program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c);

*see also Nixon v. Kijakazi*, No. 6:20-cv-957-JRK, 2021 WL 4146295, at *3

(M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important.

20 C.F.R. § 404.1520c(b)(2).  Supportability addresses the extent to which a

medical source has articulated record evidence bolstering his own opinion,

while consistency deals with whether a medical source's opinion conforms to

other evidence in the record.  20 C.F.R. §§ 404.1520c(b)(1)–(2), (c)(1)–(2);

*Barber v. Comm'r of Soc. Sec.*, No. 6:20-cv-1222-LRH, 2021 WL 3857562, at

*3 (M.D. Fla. Aug. 30, 2021) (citation omitted).  The ALJ may, but is not

required to, explain how the ALJ considered the remaining three factors of

relationship with the claimant, specialization, and "other factors."  20 C.F.R.

§ 404.1520c(b)(2)); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-

1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation

omitted).

Both parties acknowledge that the ALJ misstated PA Shelton's

assessed limitation regarding lifting and carrying.  (*See* Tr. 22.)  The ALJ

10

found PA Shelton's opinion to be unpersuasive overall, but accepted "some" of his opinions because they were "consistent with [the] record," including Plaintiff's "ability to lift and carry weight and need to change position regularly." (*Id.*)  Plaintiff argues that "[t]he ALJ accepted Mr. Shelton's findings about Plaintiff's ability to lift and carry." (Doc. 19 at 16.)  However, the ALJ's acceptance of PA Shelton's opined limitation was clearly predicated on his misrepresentation of the opinion—that Plaintiff could carry 20 pounds occasionally and 10 pounds frequently—which was consistent with other evidence in the records that Plaintiff could perform light work.

These records included the opinions of the State agency consultants, Max Kattner, M.D. and Neil Lewis-Levine, D.O., both of whom opined that Plaintiff was capable of performing light work, and, specifically, that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 61-63, 76-78.)  The ALJ was "persuaded" by the assessments of Drs. Kattner and Lewis-Levine.  (Tr. 24.)  Additionally, there were other records showing that Plaintiff could lift and/or carry more weight than PA Shelton's opined limitation.  (*See, e.g.,* Tr. 690 (stating that Plaintiff had a "20[-]pound lifting restriction"); Tr. 823 (recommending to continue with Plaintiff's "20[-]pound lifting restriction"); Tr. 864 (stating that Plaintiff's permanent lifting restriction was 35 pounds and his permanent impairment rating was three percent); Tr. 866 (stating that Plaintiff should not lift more than 30 pounds

11

and should not bend, twist, or climb); Tr. 431 (stating that Plaintiff should

not lift more than 30 pounds and should not bend or twist); Tr. 813 (stating

that Plaintiff should not lift more than 30 pounds and should not bend or

twist); Tr. 870 (stating that Plaintiff should not lift more than 30 pounds and

should not bend or twist); *but see* Tr. 777, 786 & 791 (stating that Plaintiff

should carry and lift floor to waist less than 20 pounds)).

Thus, given the substantial evidence in the record to support the ALJ's

lifting and carrying restriction, the ALJ's misstatement about PA Shelton's

lifting and carrying restriction was harmless error. *See Diorio v. Heckler*, 721

F.2d 726, 728 (11th Cir. 1983); *Tackett v. Comm'r of Soc. Sec.*, No. 21-11852,

2022 WL 2314095, at *1 (11th Cir. June 28, 2022) ("Even if an ALJ commits

an error, the error is harmless if it did not affect the ALJ's ultimate

determination.")

Plaintiff further argues "the ALJ erred in finding that the treatment

notes contradicted the rest of Mr. Shelton's opinion." (Doc. 19 at 16.) While

the issue of the internal consistency of PA Shelton's opinions may weigh on

the supportability factor, the issue remains about the consistency factor,

which deals with the source's consistency with other evidence in the record.

*See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *3

(M.D. Fla. Apr. 6, 2021) ("Overall, supportability relates to the extent to

which a medical source has articulated support for the medical source's own

opinion, while consistency relates to the relationship between a medical

source's opinion and other evidence within the record."). Here, the ALJ found

that PA Shelton's opinions were not generally consistent with the rest of the

record. (*See* Tr. 22 ("[T]he majority of Mr. Shelton's opined limitations are

unpersuasive since they are exaggerated speculative statements not

supported by or consistent with any objective medical evidence . . . ."); *see also*

Tr. 20-22 (discussing Plaintiff's medical history between April 2015 and

March 2019).)

Notably, the ALJ did incorporate PA Shelton's opinion to some extent

in his RFC assessment. (*See* Tr. 24 ("[A]fter consideration of the record as a

whole, *including Mr. Shelton's somewhat exaggerated functional assessment*

(Ex. 14F), the limitations opined by the claimant's doctors in connection to

his worker's compensation claim (Ex. 1F, 6F, 7F, 9F) and the claimant's

allegations, the [ALJ] finds that it is appropriate to assess more restrictive

limitations on the claimant's ability to perform postural maneuvers, to sit

and stand, as described above, and to be exposed to vibration.") (emphasis

added).) Yet, the ALJ was not required to adopt PA Shelton's assessed

limitation as to lifting and carrying, especially when, as discussed above,

there was substantial evidence to the contrary. *See Barnes v. Sullivan*, 932

F.2d 1356, 1358 (11th Cir. 1991) ("Even if we find that the evidence

preponderates against the Secretary's decision, we must affirm if the decision

is supported by substantial evidence."); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).  The RFC is in the province of the ALJ to develop and assess.  *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c) (noting that for cases at the administrative law judge hearing level "the administrative law judge . . . is responsible for assessing your residual functional capacity"); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (per curiam) (stating that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors").  Here, the ALJ's RFC assessment is supported by substantial evidence in the record, and, as shown earlier, any error in the ALJ's evaluation of PA Shelton's opinion is harmless.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on July 13, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

14